IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CIGNITI TECHNOLOGIES INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-2460-L |
| | § | |
| PRADEEP GOVINSADAMY, | § | |
| KALYANA RAO KONDA, RAVI | § | |
| SINDRI, KOTESWARA RAO | § | |
| BIPILLI, ASHWIN BAKSHI, | § | |
| RAMANATHAN PONNUSAMY, and | § | |
| QUALIZEAL INC, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED
STATES MAGISTRATE JUDGE**

Defendants Ashwin Bakshi ("Aswhin"), Koteswara Rao Bipilli ("Kote"),
Pradeep Govinsadamy ("Pradeep"), Kalyana Rao Konda ("Kalyana"), Ramanathan
Ponnusamy ("Ram"), QualiZeal Inc. ("QualiZeal"), and Ravi Sindri ("Ravi") filed a
Motion to Compel Arbitration [Dkt. No. 20]. Plaintiff Cigniti Technologies Inc.
("Cigniti") filed a response, *see* Dkt. No. 27, and Defendants filed a reply, *see* Dkt. No.
28.

In the alternative to their Motion to Compel Arbitration, Defendants also filed
a Motion to Dismiss for Failure to State a Claim [Dkt No. 21]. Cigniti filed a response,
*see* Dkt. No. 26, and Defendants filed a reply, *see* Dkt. No. 28.

United States District Judge Sam A. Lindsay has referred these motions [Dkt.
No. 20; Dkt. No. 21] to the undersigned United States Magistrate Judge for hearing,

if necessary, and findings, conclusions, and a recommendation under 28 U.S.C. § 636(b). *See* Dkt. No. 23; Dkt. No. 24.

## Background

Cigniti is an independent quality engineering and software testing services company. *See* Dkt. No. 1 at 5. Defendants Ashwin, Kote, Pradeep, Kalyana, Ram, and Ravi were employees of Cigniti. *See id.* at 7. Each received the employee handbook and agreed they would not violate the policies regarding authorized and unauthorized use of Cigniti property and information. *See id.* Pradeep and Kalyana became the President for Cigniti North America's Western Division and President for Cigniti North America's Eastern Division, respectively. *See id.* at 9.

Cigniti alleges that Pradeep and Kalyana began building a competing business, QualiZeal, while working for Cigniti, *See id.* Cigniti alleges they also recruited Ram, Aswhin, Kote, and Ravi to leave Cigniti and work for QualiZeal. *See id.* at 10. Cigniti alleges that Ram, Aswin, Kote, and Ravi used Cigniti property, such as laptops, to host meetings on behalf of QualiZeal and contact Cigniti customers on behalf of QualiZeal while still working for Cigniti. *See id.* at 10-12.

Cigniti also alleges that Pradeep used an unauthorized software program to delete information of his alleged wrongdoing while still working for Cigniti, and Defendants Ravi, Kote, Kalyana, and Ashwin also destroyed evidence on their computers before returning them to Cigniti. *See id.* at 13-17.

Cigniti also alleges that both Pradeep and QualiZeal committed copyright infringement by taking PowerPoint slides from Cigniti and portraying them as QualiZeal's slides. *See id.* at 18.

Cigniti brings claims for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 against defendants, including transmission claims (18 U.S.C. § 1030(a)(5)) against Pradeep, Kalyana, Ravi, Kote, and Ashwin, unauthorized access to cause damages claims (18 U.S.C. §1030(a)(5)(C)) against Kalyana, Ravi, Ashwin, and Kote, unauthorized access to further fraud claims (18 U.S.C. § 1030(a)(4)) against Kalyana, Ravi, Kote, and Aswhin, unauthorized access to obtain information claims (18 U.S.C. §1030(a)(2)(C)) against Ravi, Kote, and Aswhin, and conspiracy to violate the Computer Fraud and Abuse Act claims (18 U.S.C. § 1030(b)) against Pradeep, Kalyana, Ravi, Kote, and Aswhin. *See id.* at 24-39. Cigniti also brings harmful access to a computer claims (TEX. CIV. PRAC. & REM. CODE 143.001) against Pradeep, Kalyana, Ravi, Kote, Aswhin, and Ram. *See id.* at 40. Cigniti brings identical copyright infringement claims against QualiZeal and Pradeep. *See id.* at 40-44.

Cigniti requests a permanent injunction, various judgments, and monetary damages from the Court. *See id.* at 44-46.

After Cigniti filed their complaint in this Court [Dkt. No. 1], Defendants filed both their Motion to Compel Arbitration [Dkt. No. 20] and their Motion to Dismiss [Dkt. No. 21].

## Legal Standards

### I.   Motion to Compel Arbitration

"[A]rbitration is a matter of contract", so "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

In enacting the Federal Arbitration Act ("FAA"), Congress "expressed a strong policy favoring arbitration." *J. S. & H. Const. Co. v. Richmond Cty. Hosp. Auth.*, 473 F.2d 212, 214-15 (5th Cir. 1973). The FAA provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

A party may bring a motion to compel arbitration under the FAA, and a court must direct parties to arbitration if it is "satisfied that the making of the agreement for arbitration ... is not in issue." 9 U.S.C. § 4.

When determining a motion to compel arbitration, "[e]nforcement of an arbitration agreement involves two analytical steps. The first is contract formation – whether the parties entered into any arbitration agreement at all. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (cleaned up). And. so, "the only issue at the first step is whether there is any agreement to arbitrate any set of claims. Determining whether that agreement covers the claim at bar is the second step." *Id.* at 202.

"While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate."

*Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). "Only at the second step of the analysis – determining the scope of the arbitration agreement – do courts apply the federal policy favoring arbitration and resolve ambiguities in favor of arbitration." *Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 914 (5th Cir. 2014).

"Ordinarily both steps are questions for the court. But where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala*, 830 F.3d at 201 (cleaned up).

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," and "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 70 (2010) (cleaned up).

"Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator. Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 202. And, so, "[i]f a party opposing arbitration contests the validity of the contract, that goes to the arbitrator; if the party contests the existence of a contract, it stays with" the court. *Lopez v. Cintas Corp.*, 47 F.4th 428, 433 (5th Cir. 2022).

Under this framework, "if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step – an analysis of contract formation – as it always does." *Kubala*, 830 F.3d at 202 (cleaned up). That is, "[a]s always, [the court] ask[s] if the parties entered into a valid agreement." *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019).

"If they did," the court must "turn to the delegation clause," and "the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause – that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Archer*, 935 F.3d at 279 (cleaned up); *Kubala*, 830 F.3d at 202 (cleaned up). "When determining that intent, [c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Archer*, 935 F.3d at 279 (cleaned up).

"If there is a valid delegation, the court must grant the motion to compel," *id.* (cleaned up), because "the arbitrator decides whether the claim is arbitrable," *Matter of Willis*, 944 F.3d 577, 579-80 (5th Cir. 2019) (cleaned up); *accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. *See* 9 U.S.C. § 2. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.").

But, if the agreement does not contain a valid delegation clause, and the court therefore has "the power to decide arbitrability," the court "must perform the ordinary arbitrability analysis" and address the scope of the arbitration agreement and whether the claim or claims are covered. *Archer*, 935 F.3d at 282; *Kubala*, 830 F.3d at 203.

"When deciding whether the parties agreed to arbitrate the dispute in question, courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302-03 (5th Cir. 2021). The court "do[es] so against the backdrop of a strong presumption in favor of arbitration," *Archer*, 935 F.3d at 282 (footnote omitted), where "[a]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *accord Polyflow*, 993 F.3d at 303.

But the court must "also remain mindful of the fact that the FAA does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." *Archer*, 935 F.3d at 282 (cleaned up). "While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Id.* at 283 (cleaned up).

Finally, "[i]f the court finds that the parties agreed to arbitrate, the court typically must consider whether any federal statute or policy renders the claims nonarbitrable." *Polyflow*, 993 F.3d at 302 (cleaned up).

II.   <u>Motion to Dismiss</u>

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it

is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. That rationale has even more force in this case, as the Court "must construe the pleadings of pro se litigants liberally." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice").

## Analysis

I.     Motion to Compel Arbitration

A.  Valid Agreement

In determining arbitrability, the Court must first decide if there is a valid agreement. *See Kubala*, 830 F.3d at 201.

Defendants Pradeep, Ravi, Ashwin, and Ram (collectively "signatory defendants") signed an employment agreement with Cigniti, which states

> Section 8.09 -- Governing Law and Dispute Resolution: This Agreement shall be governed by the laws of the State of Texas. The parties agree that, in the event a dispute arises between them, they will attempt, in good faith, to resolve such dispute in an amicable and equitable manner. The parties further agree that the matter will be decided by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association. Either party may apply to the American Arbitration Association to institute the arbitration proceedings which are to be held exclusively in Dallas, Texas. Should either party refuse to submit or participate once a proceeding for arbitration has begun then the filing party may, at their election, choose to file a civil action under the exclusive jurisdiction of Dallas County, Texas, civil court.

Dkt. No. 20 at 3.

The signatory defendants argue that since this section is part of the employment agreement, it is a valid arbitration agreement. *See id.* at 7. Cigniti argues that not only have various defendants made inconsistent statements in previous proceedings regarding the existence of a valid employment agreement and its interpretation, but also the agreement does not mandate arbitration, making it not a valid agreement to arbitrate. *See* Dkt. No. 27 at 2-3. Cigniti argues that the provision "[s]hould either party refuse to submit or participate once a proceeding for

arbitration has begun then the filing party may, at their election, choose to file a civil action under the exclusive jurisdiction of Dallas County, Texas, civil court" means that the parties can elect to pursue litigation in place of arbitration. *Id.*

Both parties seem to argue the employment agreement is a valid agreement between the signatory defendants and Cigniti, regardless of whether the defendants argued in the past the employment agreement was invalid.

Assuming the employment agreement is valid, the issue whether the employment agreement "requires [the parties] to resolve [the] dispute through arbitration" is "more appropriately analyzed under step one" than step two. *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 237 (5th Cir. 2013). And "the initial question of whether there is a valid agreement to arbitrate usually concerns matters of contract formation." *See id.*

> In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. To achieve this objective, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. A contract is unambiguous if it can be given a definite or certain legal meaning. On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent.

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

The undersigned acknowledges that the presumption in favor of arbitration does not apply in determining whether there is a valid agreement to arbitrate and

that an agreement that only allows disputes to be resolved through arbitration, as opposed to mandating it, is not a valid agreement to arbitrate.

But that is not the case here. As the signatory defendants persuasively state, the use of "may" in the phrase "[e]ither party may apply to the American Arbitration Association to institute the arbitration proceedings" [Dkt. No. 20 at 3] allows "either party to request arbitration" and does not mean "arbitration [is] optional if either [does]." *In re U.S. Home Corp.*, 236 S.W.3d 761, 765 (Tex. 2007) ("In this proceeding, the plaintiffs claim arbitration was not mandatory because while the sales agreements required arbitration, the Canos' warranty book said only that either party "may request" arbitration. … While the warranty's clause allowed either party to request arbitration, nothing in it suggests arbitration was optional if either did; to the contrary, the clause constituted a binding promise to arbitrate if either party requested it.); *accord Deaton Truck Line, Inc. v. Loc. Union 612, Affiliated with Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 314 F.2d 418, 422 (5th Cir. 1962) ("Appellant argues that the use of the word 'may' in the contract prevents arbitration from being compulsory or obligatory. Clearly, however, 'may' should be construed to give either aggrieved party the option to require arbitration."); *Smiley Networks, Inc. v. Digital Advert., LLC*, No. A-09-CA-834-SS, 2010 WL 11603155, at *3, *3 n.2 (W.D. Tex. Mar. 9, 2010) (noting that the use of "may" in the phrase "[i]f such mediation is not successful in resolving the dispute within an additional 30 days, either party may submit the dispute to binding arbitration," "does not render the provision permissive; instead, the provision makes arbitration

mandatory once either party submits the dispute to arbitration. The overwhelming amount of authority is consistent with this interpretation.").

Neither does this sentence render arbitration optional: "Should either party refuse to submit or participate once a proceeding for arbitration has begun then the filing party may, at their election, choose to file a civil action under the exclusive jurisdiction of Dallas County, Texas, civil court." Dkt. No. 20 at 3. Although the employment contract later contemplates fees for litigation or arbitration, the undersigned is persuaded that the above sentence 1) only applies once a proceeding for arbitration has begun, and 2) the filing party must refer to a party who filed something before filing a civil action. *See* Dkt. No. 28 at 5; Dkt. No. 27 at 9 (discussing the provision "Section 8.11 -- Litigation Expenses: In the event of litigation or arbitration arising out of this Agreement, each party shall pay its own costs and expenses of litigation and arbitration (excluding fees and expenses of arbitrators and administrative fees and expenses of arbitration)." (emphasis removed)).

The undersigned believes finding the agreement contains a valid agreement to arbitrate most accurately "harmonize[s] [the agreement] and give[s] effect to all provisions so that none will be meaningless." *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010).

B. <u>Delegation Clause</u>

The signatory defendants point to the incorporation of the American Arbitration Association ("AAA") rules in the arbitration section as evidence of a

delegation clause, and so argue the that all gateway issues of arbitrability must go to an arbitrator. *See* Dkt. No. 20 at 12.

"Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself. However, courts may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551-52 (5th Cir. 2018) (internal citations omitted).

"If there is a valid delegation, the court must grant the motion to compel," *Archer*, 935 F.3d at 279 (cleaned up), because "the arbitrator decides whether the claim is arbitrable," *Matter of Willis*, 944 F.3d 577, 579-80 (5th Cir. 2019) (cleaned up).

The Fifth Circuit has held that "generally, stipulating that the AAA Rules will govern the arbitration of disputes constitutes such 'clear and unmistakable' evidence…" the parties intended to arbitrate threshold questions. *Arnold*, 890 F.3d at 552.

Section 8.09 of the parties employment agreement states that "[t]he parties further agree that the matter will be decided by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association." Dkt. No. 20 at 3. The undersigned finds this is clear and unmistakable intent the parties intended to arbitrate threshold questions of arbitrability, at least as to the signatory defendants. The undersigned is not persuaded by Cigniti's argument that arbitration

is optional in this case. *See* Dkt. No. 27 at 12-13. Nor is the undersigned persuaded that there is an applicable "carve-out" provision or other indication in Section 8.09 that the AAA should not govern all disputes. *See id.*

Cigniti also supports their argument by referencing the order of the state court, which denied Defendant Pradeep Govindasamy's Motion to Stay and Compel Arbitration. *See* Dkt No. 27 at 3; Dkt. No. 27-4. But, after Cigniti made this argument to this Court, the Dallas Court of Appeals of Texas reversed the state court's order for abuse of discretion. *QualiZeal, Inc. v. Cigniti Techs., Inc.*, No. 05-22-00923-CV, 2024 WL 833439, at *6 (Tex. App. Feb. 28, 2024). The Court found that Section 8.09 incorporated the rules of the AAA, and so concluded "Cigniti Technologies and Govindasamy clearly and unmistakably agreed to delegate arbitrability issues to the arbitrator." *Id.*

Because there is a valid agreement to arbitrate and a valid delegation clause, the Court should grant the Motion to Compel Arbitration as to the signatory defendants.

### C. Application of the Delegation Clause and Arbitration Agreement to the <u>Non-Signatory Defendants</u>

The signatory defendants assert that Cigniti should be forced to arbitrate its claims against the non-signatory defendants under the theory of intertwined claims estoppel. *See* Dkt. No. 20 at 7-11. They also argue for the first time in their reply that whether the nonsignatories can enforce the agreement is a gateway issue of arbitrability that the parties have delegated to an arbitrator, relying on *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 714 (5th Cir. 2017).

Even if the Court were to consider the defendants' argument, the Fifth Circuit had distinguished the case the defendants rely on, rejecting the interpretation that "*Brittania-U* held that enforceability between the parties is a second-step, arbitrability question[.]" *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 400 (5th Cir. 2022). The Court explained "[i]t is up to us—not an arbitrator—to decide whether [nonsignatories] can enforce the … arbitration agreement." *Id.* at 399.

And so, regardless of whether there is a valid delegation clause, "the Court determines the arbitrability of claims against nonsignatories." *Lower, LLC v. Amcap Mortg., Ltd.*, No. 4:23-CV-685, 2024 WL 2784326, at *7 (E.D. Tex. May 30, 2024).

Having established that the Court should determine whether a nonsignatory can enforce an arbitration clause, the Court should consider whether intertwined claims estoppel permits the nonsignatory defendants to enforce the arbitration clause in this case.

"Intertwined claims estoppel involves 'compel[ling] arbitration when a nonsignatory defendant has a 'close relationship' with one of the signatories and the claims are 'intimately founded in and intertwined with the underlying contract obligations.'" *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610 (5th Cir. 2016) (quoting *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 193-94 (Tex. 2007) (quoting *Thompson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995))).

Courts have employed this exception to dismiss "strategic pleading" that seeks to avoid arbitration. *See Hays*, 838 F.3d at 610.

Although the Texas Supreme Court has not expressly adopted intertwined claims as a valid theory of estoppel, *see Merrill Lynch*, 235 S.W.3d at 193, the Fifth Circuit made an "Erie guess" and concluded that the Texas Supreme Court would apply the doctrine in appropriate circumstances, *see Hays*, 838 F.3d at 610-11.

In *Hays*, the Fifth Circuit determined that the Texas Supreme Court "intimated at the validity of intertwined claims estoppel" in *Merrill Lynch*. 838 F.3d at 612. Based on that determination, in addition to application of intertwined estoppel by Texas lower courts and the strong federal and Texas state policy favoring arbitration, the Fifth Circuit determined that "the Texas Supreme Court, if faced with the question, would adopt intertwined claims estoppel." *Id.*

In *Hays*, the Fifth Circuit also noted "[s]ome imprecision exists when distinguishing between intertwined claims and concerted misconduct estoppel." *Hays*, 383 F.3d at 610 n.4. For example, it observed that it used the phrase "intertwined claims" in *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 527-28 (5th Cir. 2000), but did so in reference to concerted misconduct estoppel, *see id*. Conversely, the Court of Appeals observed that the Texas Supreme Court, in *Merrill Lynch*, differentiated between *Grigson's* concerted misconduct test, which it ultimately rejected, and the theory of intertwined claims estoppel. *See Hays*, 838 F.3d at 610 n.4; *Merrill Lynch*, 235 S.W.3d at 192-93.

The Fifth Circuit's "interpretation of Texas law is binding on the district court, unless a subsequent state court decision or statutory amendment renders [the Fifth Circuit's] prior decision clearly wrong." *Hughes v. Tobacco Institute, Inc.*, 278 F.3d

417, 421 (5th Cir. 2001). And so, the Court should apply the theory of intertwined claims estoppel in the appropriate circumstances.

Analyzing the "close relationship" element of intertwined claims estoppel, the Fifth Circuit explained:

> [U]nder Texas law, a close relationship is a term of art, generally requiring formal corporate affiliation. The relationship between a typical insurance agency and an "independent broker or salesman," for instance, is not close enough in Texas. The relationship "must be closer than merely independent participants in a business transaction." The test is one of "consent, not coercion." Would a reasonable signatory to the arbitration agreement anticipate being forced to arbitrate claims against the nonsignatory? On the other hand, we have said that when plaintiffs treat multiple defendants "as a single unit" in their pleadings, "raising virtually indistinguishable factual allegations" against them, then that cuts in favor of a close relationship.

*Newman*, 23 F.4th at 404-05.

And "close relationships "typically include a non-signatory owner, agent, or parent of a signatory company." *Johnson v. Parsley Energy Operations, LLC*, No. MO:21-CV-053-DC, 2022 WL 2027963, at *4 (W.D. Tex. May 3, 2022), *appeal dismissed sub nom. Johnson v. Parsley Energy Operations, L.L.C.*, No. 22-50451, 2023 WL 3863102 (5th Cir. Feb. 22, 2023) (quoting *Randle v. Metro. Transit Auth. of Harris Cty.*, No. CV H-18-1770, 2018 WL 4701567, at *9 (S.D. Tex. Oct. 1, 2018)).

The Court cannot conclude a close relationship with nonsignatory defendants Kote and Kalyana. While Cigniti brings overlapping causes of action against the nonsignatory defendants and signatory defendants, Cigniti at no point treats Kote and Kalyana as a singular unit with a signatory defendant. In each cause of action, Cigniti alleges individual facts against Kote and Kalyana compared with other signatory defendants, such as individual incidents of unauthorized access. *See, e.g.*,

Dkt. No. at 33-34. And the allegations do not sound out of the employment agreement containing the arbitration agreement. It does not appear that Cigniti would have anticipated needing to arbitrate its claims against Kote and Kalyana. *See, e.g.*, *VIANAY RODRIGUEZ, Plaintiff, v. GRYPHON HOLDCO, LLC, & CONOCOPHILLIPS COMPANY, Defendants.*, No. 5:23-CV-379-DAE, 2023 WL 11833599, at *6 (W.D. Tex. Nov. 21, 2023) (finding a close relationship when "Plaintiff allege[d] the same causes of action and claims the same damages against all defendants and does not explicitly allege anything differently against any defendant individually. Further, based on Plaintiff's own allegations, it is undisputable that Plaintiff regarded all defendants as closely related and that there is a "tight relatedness of the parties, contracts and controversies."); *Castaneda v. Volt Mgmt. Corp.*, No. EP-19-CV-00338-FM, 2020 WL 2308699, at *6 (W.D. Tex. May 8, 2020) (finding a close relationship when "Plaintiff raised the same causes of action against… Defendants[,] [s]he support[ed] her claims with virtually identical facts[,] and d[id] not specifically allege anything different against any defendant individually. Further, Plaintiff's claim is rooted in the terms of her employment, subject to the employment application and employment agreement. … Based on Plaintiff's allegations, it is clear … that the discrimination and retaliation claims against each are intertwined with the underlying employment contract obligations.").

The claims against QualiZeal, the corporation founded by Pradeep (signatory) and Kalyana (nonsignatory), present a closer case of intertwined claims estoppel. It is true that QualiZeal was founded after the employment agreements were executed,

which while may not be dispositive, weighs against the argument Cigniti would have anticipated having to arbitrate its claims against QualiZeal. Cigniti does treat QualiZeal and Pradeep as indistinguishable in its allegations against QualiZeal, but Cigniti asserts additional claims against Pradeep and not QualiZeal, seemingly individuating them. And so, the Court should similarly not conclude that intertwined claims estoppel requires Cigniti to arbitrate its claims against QualiZeal.

And so, the Court should not compel arbitration as to the claims against QualiZeal, Kote, and Kalyana.

III.   <u>Motion to Dismiss</u>

As the undersigned recommends that the Court should not compel arbitration as to the claims against QualiZeal, Kote, and Kalyana, the undersigned will analyze the motion to dismiss submitted in the alternative to the motion to compel arbitration.

1.   <u>Consideration of Matters Outside the Pleadings</u>

Defendants attach Cigniti's Third Amended Petition, filed in state court, as part of their joint appendix to their Motion to Dismiss and Motion to Compel Arbitration. *See* Dkt. No. 22. Cigniti also attaches a portion of their Third Amended Petition to their response to the Motion to Dismiss. *See* Dkt. No. 26-1.

While neither party addresses the permissibility of the Court considering the Third Amended Petition, the Court must determine if the petition can properly be considered on a motion to dismiss or if it should be excluded. If the Court considers matters that are outside the pleading on a motion to dismiss, "the motion must be

treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). But "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris*, 500 F.3d at 461 n.9.

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *In re James*, 300 B.R. 890, 894 (W.D. Tex. 2003). "When a court takes judicial notice of public documents or documents from another court, it may only take notice of the undisputed facts therein, which do not include the 'facts' asserted in various affidavits and depositions." *DeFranceschi v. Seterus, Inc.*, No. 4:15-CV-870-O, 2016 WL 6496319, at *2 (N.D. Tex. Apr. 18, 2016) (citing *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 664-65 (N.D. Tex. 2011)).

And so, the Court should take judicial notice of the petition only to "establish the fact of such litigation." *See id.* Because the Court is not impermissibly considering any exhibits outside the pleadings, the Court should not convert the Motion to Dismiss to a Motion for Summary Judgment.

### 2.   Claim Splitting

"The rule against claim splitting prohibits a party or parties in privity from simultaneously prosecuting multiple suits involving the same subject matter against the same defendants." [*General Land Off. v. Biden*, 71 F.4th 264, 269-70 (5th Cir. 2023)]. The rule is based on principles of res judicata and "protect[s] the defendant from being harassed by repetitive actions based on the same claim." *Id.* at 270 (quoting *In re Super Van, Inc.*, 92 F.3d 366, 371 (5th Cir. 1996)).

*Armadillo Hotel Grp., L.L.C. v. Harris*, 84 F.4th 623, 628 (5th Cir. 2023).

"This test is modified when the prior suit is pending because, by definition, no final judgment from the prior suit exists. … Accordingly, in the context of claim splitting when an earlier suit is pending, the relevant *res judicata* factors are (1) whether the parties are the same or in privity and (4) whether "the same claim or cause of action" is 'involved in both suits.'" *See id.* (internal citations omitted).

The Fifth Circuit uses the "transactional test" to determine if there is "the same claim or cause of action." *Id.* "'[T]he critical issue is whether the two actions were based on the 'same nucleus of operative facts,'" and "we look to the factual predicate of the claims asserted, not the legal theories upon which the plaintiff relies.'" *Id.* (citing *Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir. 1992)). The Court "assess[es] whether the factual predicate of both suits is 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id.* at 629 (citing *Petro-Hunt, LLC v. United States*, 365 F.3d 385, 396 (5th Cir. 2004).

Defendants argue that all claims against them should be dismissed as claim splitting based on the prior suit filed in the 101st District Court of Dallas County as Case No. DC-21-17023. *See* Dkt. No. 22 at App.003. In state court, Cigniti filed claims against all Defendants in this suit and an additional defendant, Doug Hall, alleging breach of contract, statutory misappropriation of trade secrets, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, tortious interference with

continuing and prospective business relations, tortious interference with a contract, fraudulent concealment, and civil conspiracy. *See id.* at App.003-App.0094. Defendants argue that the previous suit meets the Fifth Circuit test for claim splitting because the parties are the same in both suits and the suits are based on the same nucleus of operative facts. *See* Dkt. No. 26 at 5-13.

Cigniti does not dispute the parties are the same in both suits but argues that this Court has exclusive jurisdiction over the copyright claims and the other claims do not arise out of the same nucleus of operative facts. *See* Dkt. No. 26 at 2-6.

Cigniti's third amended petition is related to the same event as this suit. Both suits arise out of Defendants starting a new company during and after their employment with Cigniti, using Cigniti's data inappropriately, and concealing their wrongdoing. And the suits have some overlapping factual allegations. For example, Cigniti discusses a March 22, 2021, incident of copyright infringement of Cigniti's PowerPoint slides in their third amended petition and a June 22, 2021, incident of copyright infringement of another set of PowerPoint slides in their federal complaint. *See* Dkt. No. 1 at 18; Dkt. No. 22 at App. 014. The suits also both discuss the recruitment of Cigniti employees to QualiZeal and the meetings QualiZeal had with prospective Cigniti clients. *See e.g.*, Dkt. No. 1 at 9; Dkt. No. 22 at App. 022-023.

The suits differ in that the petition in state court is focused on defendants breaching their employment agreements and interfering with contract/prospective business relationships and the suit in this Court is focused on data destruction and copyright infringement.

Claims can still be dismissed under the claim-splitting doctrine even when the alleged acts occurred at different times, such as before employment and after employment. *See Armadillo*, 84 F.4th at 629 ("[T]he assertion that trade secrets allegedly were misappropriated after this employment relationship ended does not mean Armadillo's claims arise out of separate transactions. Instead, the fact that Harris's and McDaniel's alleged misappropriation began while employed by either Armadillo or AHG Management and continued after they resigned indicates that Armadillo's and AHG Management's claims represent a "series of connected transactions, out of which the [original] action arose.").

But the undersigned is persuaded that the claims in this suit are based on sufficiently different in "time, space, origin, or motivation" than the claims filed in state court. *Id.*; *see Advanced Micro Devices, Inc. v. Polaris Innovations Ltd.*, No. 1:23-CV-00304-DAE, 2023 WL 9183303, at *5 (W.D. Tex. Nov. 13, 2023) ("There is no question that AMD has pled causes of action based on the same underlying license agreement as cited in the parties' 2018 case. That alone does not amount to the claims violating the rule against claim splitting.").

Unlike res judicata, "claim-splitting focuses on the district court's comprehensive management of its docket." *Verde v. Stoneridge, Inc.*, 137 F. Supp. 3d 963, 967 (E.D. Tex. 2015) (citations omitted). And "[a] main purpose of the rule against a plaintiff splitting his claims into multiple lawsuits is to protect defendants from harassment by repetitive litigation." *Id.*

Claim splitting relies on "[p]rincipals of comity and judicial efficiency," which "prevent the plaintiff from being able to adjudicate what are at their core the same allegations in two separate courts". *Thomas v. Beaumont Indep. Sch. Dist.*, No. 1:15-CV-112, 2016 WL 922182 (E.D. Tex. Feb. 12, 2016), *rep. & rec. adopted*, 2016 WL 899870 (E.D. Tex. Mar. 8, 2016).

The two cases are not "at their core the same allegations in two separate courts." *Id.* The federal case brings detailed allegations around copyrighting and data destruction, while the state case alleges how Defendants breached their employment agreements.

The factual allegations are not so similar that it "would be a waste of judicial resources to allow plaintiff to pursue [its] claims." *Id.* Nor is the federal case so "repetitive" it indicates harassment. *Verde*, 137 F. Supp. 3d at 967.

And, while the undersigned has not identified any cases that address how claims that fall under exclusive federal jurisdiction relate to claim splitting when the plaintiff first files in state court, exclusively federal and state claims may not "form a convenient trial unit" or "their treatment as a unit [may not] [conform] to the parties' expectations or business understanding or usage." *Armadillo*, 84 F.4th at 629.

And, in any event, even in cases of claim splitting, "the Court retains discretion to dismiss a case on the basis of claims splitting." *Verde*, 137 F. Supp. 3d at 967; *accord Aldridge v. Cain*, No. 1:20-CV-321 HTW-MTP, 2022 WL 22258415, at *6 (S.D. Miss. Sept. 27, 2022) ("Even in cases where claim splitting actually occurs, however,

the district court has discretion to dismiss the second case or to exercise its discretion not to dismiss.").

And, so, the undersigned recommends the Court exercise its discretion and not dismiss the claims based on claim splitting.

3.   Alleging a "Transmission"

Defendants argue that Count I of the complaint should be dismissed because Cigniti does not allege a "transmission" as required under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(a).

Cigniti alleges in their complaint that

> Kalyana knowingly caused the transmission of a program, information, code, or command and, as a result of such conduct, intentionally caused damage without authorization to protected laptop computers or systems belonging to Cigniti within the meaning of § 1030(a)(5)(A) when Kalyana delayed returning his Cigniti computers, failed to return the computer passwords, and provided incorrect passwords to the same that risked loss of the computers' data.

Dkt. No. 1 at 26-27.

In their factual section of the complaint, Cigniti also alleges that Kalyana "reinstalled [the operating system]" on his company laptop. *Id.* at 15. And Cigniti alleges Kote similarly violated the CFAA when "after leaving Cigniti on November 5, 2021, [he] accessed his Cigniti-issued Dell laptop, created a new user profile, and factory-reset his Dell laptop on November 9, 2021, thus, erasing the laptop user data and information before returning his Dell laptop to Cigniti on November 15, 2021 in violation of the Cigniti Company Policies." *Id.* at 27.

18 U.S.C. § 1030(a)(5)(a) prohibits a person from "knowingly caus[ing] the transmission of a program, information, code, or command," that "intentionally

causes damage without authorization, to a protected computer[.]" 18 U.S.C. § 1030(a)(5)(a); *see Centennial Bank v. Holmes*, No. 5:23-CV-044-H, 2024 WL 733649, at \*12 (N.D. Tex. Feb. 20, 2024). And "[c]ourts have held that the CFAA must be construed narrowly, even in civil actions, because the same sections that give rise to civil remedies also give rise to criminal penalties." *Devon Energy Corp. v. Westacott*, No. CIV.A. H-09-1689, 2011 WL 1157334, at \*10 (S.D. Tex. Mar. 24, 2011).

Courts have found that "pressing a delete key does not constitute a 'transmission' within the meaning of the CFAA." *Grant Mfg. & Alloying, Inc. v. McIlvain*, No. CIV.A. 10-1029, 2011 WL 4467767, at \*8 (E.D. Pa. Sept. 23, 2011), *aff'd*, 499 F. App'x 157 (3d Cir. 2012). But supporting that conclusion, courts have also considered whether "the records marked for deletion were still available and accessible, so the act of marking them caused no damage." *See id.* Similarly, a court found that when a plaintiff "'knowingly and intentionally caused the removal and destruction of all relevant data on both of the computers' hard drives,' 'wiped clean' the drives, and 'intentionally erased and destroyed' critical data, … [t]he language used to describe the 'irretrievabl[e] wiping' and 'destruction' of data on the hard drives… [led] the Court [to] reasonably to infer that [Plaintiff] is alleging that [Defendant] did more than merely hit the delete button. In order actually to erase and destroy data, [Defendant] must have transmitted a program or command, either through the physical insertion of a disc or the downloading of a program from the Internet." *Dedalus Found. v. Banach*, No. 09 CIV. 2842 (LAP), 2009 WL 3398595, at \*4 (S.D.N.Y. Oct. 16, 2009).

And "the transmission of the secure-erasure program to the computer" can constitute a transmission even though "[p]ressing a delete or erase key" and "consider[ing] any typing on a computer keyboard to be a form of 'transmission' just because it transmits a command to the computer" may "be stretching the statute too far (especially since it provides criminal as well as civil sanctions for its violation)." *Int'l Airport Centers, L.L.C. v. Citrin*, 440 F.3d 418, 419 (7th Cir. 2006), *abrogated by Van Buren v. United States*, 593 U.S. 374, 141 S. Ct. 1648, 210 L. Ed. 2d 26 (2021).

Considering other courts' interpretation of "transmission," the undersigned concludes that "reset[ting]" a computer or "reinstall[ing]" an operating system so that files are permanently deleted could constitute a transmission under 18 U.S.C. § 1030(a)(5)(A).

And, so, the Court should not dismiss Count I against Kote and Kalyana on this basis.

4.  Alleging Without Authorization or Exceeds Authorization

Defendants asset that Cigniti fails to state a claim in Counts II-IV (18 U.S.C. § 10303(a)(5)(C); 18 U.S.C. § 1030(a)(4); 18 U.S.C. § 1030(a)(2)(C), respectively) because it does not assert that Defendants "'exceeded authorized access' " [18 U.S.C. § 1030(a)(2)(C); 18 U.S.C. § 1030(a)(4))] or accessed Cigniti's computers 'without authorization' [18 U.S.C. § 1030(a)(2)(C); 18 U.S.C. § 1030(a)(4)); 18 U.S.C. § 1030(a)(5)(c)]." Dkt. No. 21 at 14-15.

Cigniti alleges that Kote and Kalyana "knew that they did not have authorized access to Cigniti's computer systems after they left Cigniti" but that Kalyana did not

return his computer promptly and provided incorrect passwords after returning the computer to Cigniti, and that Kote accessed his Cigniti computer after leaving Cigniti by "using password recovery, creat[ing] new user profiles, and reset[ting] [his] laptop [computer]" in violation of 18 U.S.C. § 1030(a)(5)(C). Dkt. No. 1 at 30-31. Cigniti repeats these allegations against Kote and Kalyana in Count III, 18 U.SC. § 1030(a)(4). *See id.* 32-35. And Cigniti repeats these factual allegations against Kote in Count IV, 18 U.S.C. 1030(a)(2)(C). *See id.* at 35-36.

"[A] computer user who has 'authorization' is one who 'can ... access a computer system,' ... where 'access' means 'the act of entering a computer 'system itself[.]'" ... In other words, a user with 'authorization' is not subject to 'limitations on access,' whether those limitations are 'code-based' or 'contained in contracts or policies.'" *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1198 (9th Cir. 2022) (citing *Van Buren v. United States*, 593 U.S. 374, 388 (2021)) (internal citations omitted).

Exceeding authorized access is more than "obtain[ing] information from the database for an improper purpose." *Van Buren*, 593 U.S. at 396. "[An] individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Id.*

And "accessing a computer 'without authorization' is violated when a person circumvents a computer's generally applicable rules regarding access permissions, such as username and password requirements, to gain access to a computer." *hiQ Labs*, 31 F.4th at 1201; *see also Abu v. Dickson*, No. 23-1573, 2024 WL 3322518, at *7

(6th Cir. July 8, 2024) ("An improper purpose does not make for unauthorized access, so it also does not suffice to show intentional unauthorized access.").

Defendants characterize Cigniti's allegations as "improper computer use" that does not fall under "exceeds authorized access" or "without authorization" as defined in *Van Buren. See* Dkt. No. 21 at 16. Cigniti states that post-termination of employment, Kote generated a new password and established a new profile to reset his device, and Kalyana "reinstalled [the operating system]" on his computer. Dkt. No. 26 at 10. Cigniti argues that it "rescinded" its authorization after termination, evidenced by "way of company policy and because their current passwords no longer functioned to access Cigniti's system." *Id.*

The undersigned concludes that the allegations of post-termination conduct are sufficient to allege that Kalyana and Kote accessed the computers without authorization at this pleadings stage.

In examining post-termination access, a court found that "[w]hile the Complaint does not explicitly state that [Defendant]'s authorization to access Plaintiff's computers and servers was terminated along with his position as CEO, that is the clear, reasonable inference from the allegations in the Complaint as a whole, which states that [Defendant] had authorization to access Plaintiff's 'accounts, passwords, and other administrative information' solely because of his position as CEO and, after he was terminated as CEO, he accessed Plaintiff's computers and servers 'without authorization.'" *Zap Cellular, Inc. v. Weintraub*, No. 15CV6723PKCVMS, 2022 WL 4325746, at *7 (E.D.N.Y. Sept. 19, 2022).

Similarly, Cigniti's allegations in its complaint that the Defendants "knew that they did not have authorized access to Cigniti's computer systems after they left Cigniti" but still accessed the computer are sufficient to state a claim that they accessed the computers without authorization. Dkt. No. 1 at 30-31.

5. Civil Conspiracy

18 U.S.C. § 10303(b) states: "(b)Whoever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section."

Cigniti alleges that, "[a]s detailed above, Pradeep and Kalyana, both of whom are in the leadership roles at QualiZeal, Inc., conspired with Ravi, Kote, and Ashwin to access Cigniti's computer systems without authorization, obtain sensitive proprietary information and valuable Cigniti intellectual property for QualiZeal's benefit, and delete digital evidence showing their wrongdoing in violation of 18 U.S.C. § 1030(b)." Dkt. No. 1 at 37. Cigniti further alleges that Kalyana conspired with other employees to participate in meetings with potential Cigniti clients and to transfer confidential information to QualiZeal, and Kote accessed his Cigniti computer without authorization post-termination. See Dkt. No. 1 at 38.

Defendants argue that "several federal courts question the existence of a civil CFAA conspiracy case of action" but that, in the event that it exists, Cigniti does not plead "'specific allegations of an agreement and common activities to state a conspiracy claim.'" Dkt. No. 21 at 17.

The undersigned agrees with Cigniti that "[c]ourts have routinely entertained claims under section 1030(b) in civil cases." *Ryanair DAC v. Booking Holdings Inc.*, 636 F. Supp. 3d 490, 510 (D. Del. 2022). "A claim under section 1030(b) requires 'specific allegations of an agreement and common activities.'" *Id.* (citing *In re Lenovo Adware Litig.*, No. 15-MD-02624, 2016 WL 6277245, at *6 (N.D. Cal. Oct. 27, 2016)).

Courts have found allegations that the defendants "have entered into written agreements with their agents and certain third parties who access the [plaintiff's website] without authorization ... on behalf of the Defendants" sufficient to sustain a claim under Section 1030(b). And allegations that defendants "knowingly instigated and conspired … to access [Plaintiff's] protected computer" are sufficient to state a claim. *Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 328 (M.D. Pa. 2014), *aff'd*, 958 F.3d 168 (3d Cir. 2020); *see also Cloudpath Networks, Inc. v. SecureW2 B.V.*, 157 F. Supp. 3d 961, 985 (D. Colo. 2016) ("the thrust of Cloudpath's [first amended complaint] is that Defendants' entire course of conduct was motivated by an agreement between them to obtain data that would make their new venture more competitive. Accordingly, it is a fair inference that this alleged conspiracy extended to Grimm's post-resignation access. … If SecureW2-USA encouraged Grimm's post-resignation access, which is a reasonable inference from the [first amended complaint], then SecureW2-USA may be vicariously liable for the alleged CFAA violation.") (internal citations omitted).

But "[t]he CFAA does not create a cause of action for aiding and abetting." *Id.* And allegations that defendants conspired to "steal and use Plaintiffs' trade secrets…

to help launch a competing company" are not sufficient when the only factual allegations to support the claims are that the defendants "spoke numerous times on the phone and [Defendant] was involved in the formation of the competitor." *Trademotion, LLC v. Marketcliq, Inc.*, 857 F. Supp. 2d 1285, 1294 (M.D. Fla. 2012). As a court explained, "[w]hile the term 'conspires' is not defined here, its meaning in other criminal statutes implies a knowing agreement with another to commit the unlawful act." *See id.*

The undersigned concludes that Cigniti's allegations are not sufficient to state a civil conspiracy claim. While Cigniti alleges that "[i]n preparation for the meetings on November 8, 2021, upon information and belief, Ravi and Kalyana coordinated with Pradeep to transfer copies of Cigniti's confidential and proprietary information and copyrights to QualiZeal," Cigniti does not allege how these actions were a conspiracy to violate the CFAA. Dkt. No. 1 at 38.

And, although Cigniti alleges that Kote and other employees that left to work for QualiZeal accessed their laptops post termination, this similarly does not allege a conspiracy to violate the CFAA. *See id.*

And so, the Court should dismiss without prejudice the conspiracy claims against Kote and Kalyana.

6.  <u>Damages Under CFAA</u>

Defendants argue that Cigniti fails to state a claim in Counts I-V (violations of the CFAA) because they fail to "allege damages over the statutory threshold for each alleged act by each Defendant under each subsection." Dkt. No. 21 at 19. Defendants

assert that Cigniti must "plead $5,000 in loss for each Defendant under each subsection." *Id.* at 21 (emphasis removed).

18 U.S.C. § 1030(e)(8) defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information[.]" 18 U.S.C. § 1030(e)(11) defines loss as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]"

"A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)" which includes "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value[.]" 18 U.S.C. § 1030(c)(4)(A)(i)(I); 18 U.S.C. § 1030(g).

In addition to meeting one of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i) 18 U.S.C. §§ 1030 a(5)(A) and (a)(5)(C) also all refer to "a protected computer" or "any protected computer."

Under 18 U.S.C. § 1030(a)(5)(A), Cigniti alleges:

[t]he value of the data and information deleted by each of the defendants Pradeep, Kalyana, Ravi, Kote, and Ashwin amounted to more than $5,000 in damages within the meaning of § 1030(a)(5)(A). Further, the loss of access to original Cigniti files, confidential information, coupled with the cost of computer forensic analysis and attempts to reclaim such information amounts to more than $5,000 in damages within the meaning of § 1030(a)(5)(A).

Dkt. No. 1 at 28.

Cigniti makes a similar allegation under 18 U.S.C. § 1030(a)(5)(C).

18 U.S.C. § 1030(a)(4) prohibits anyone from "(4) knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period[.]"

> Under 18 U.S.C. § 1030(a)(4) Cigniti alleges:
>
> The use of Kalyana's Cigniti computers and the data thereon is valued at more than $5,000 in any 1-year period within the meaning of § 1030(a)(4) because the laptops could not be used in Cigniti's day-to-day operations to generate revenue for the company so long as Kalyana refused to surrender his laptops and provide his password to Cigniti.
> …
> Kote, knowingly and with the intent to defraud, accessed a protected computer from an offsite location without authorization and unlawfully obtained information of value exceeding $5,000 in a 1-year period within the meaning of § 1030(a)(4) when, after his last day of employment at Cigniti on November 5, 2021, he factory reset and deleted the data on his computer.

*Id.* at 34.

18 U.S.C. § 1030(a)(2)(C) prohibits anyone from "(2) intentionally access[ing] a computer without authorization or exceed[ing] authorized and access thereby obtain[ing] (C) information from any protected computer[.]"

Cigniti does not allege a specific monetary loss in Count IV (18 U.S.C. § 1030(a)(2)(C)) but relies on other parts of the complaint that allege damage in amounts of over $5,000. *See* Dkt. No. 26 at 23; Dkt. No. 1 at 36-37.

Defendants argue that this "inappropriately attempts to aggregate its statutory threshold loses across multiple alleged 'violators' and 'protected computers.'" Dkt. No. 21 at 20. Defendants cite a case finding that aggregation of damages was not proper when "the facts alleged in the … suggest multiple acts by multiple defendants. The acts occurred at different times and to different plaintiffs. As such, plaintiffs cannot aggregate their alleged damages." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 988 F. Supp. 2d 434, 448 n. 11 (D. Del. 2013), *aff'd in part, vacated in part, remanded,* 806 F.3d 125 (3d Cir. 2015).

Some courts have found that "the plain language of section 1030(a)(5)(A) requires 'damage' to '*a* protected computer.' 18 U.S.C. § 1030(a)(5)(A) (emphasis added). As the emphasized language indicates, the $5,000 aggregated loss must be to *a* computer." *Thurmond v. Compaq Computer Corp.*, 171 F. Supp. 2d 667, 681 (E.D. Tex. 2001). The *Thurmond* court further explained that

> [t]his is not to say that the computer itself must incur "damage" equal to $5,000 as a result of the transmission. Rather, the transmission to a computer must cause loss totaling at least $5,000. For instances, if the defective FDC in Plaintiffs' computers corrupted $5,000 worth of data, then Plaintiffs would meet the statutory minimum. Stated differently, no one can bring a cause of action unless the defendant causes an aggregate of $5,000 "damage" to a protected computer. … Accordingly, Plaintiffs must offer summary judgment evidence of a transmission to a computer that caused loss of at least $5,000.

*Id.*

Neither case cited by Cigniti addresses this issue. *See Simmonds Equip., LLC v. GGR Int'l, Inc.*, 126 F. Supp. 3d 855, 865 (S.D. Tex. 2015) ("Simmonds has alleged that it lost a business opportunity worth $1,000,000.00 due to an interruption in service of its website caused by GGR, Simmonds has sufficiently alleged that GGR's

actions caused it to suffer 'loss' in an amount sufficient to satisfy the pleading requirements for stating a CFAA claim under subsection (a)(5)(B) or (a)(5)(C)."); *see also Charles Schwab & Co. v. Carter*, No. 04 C 7071, 2005 WL 351929, at *3 (N.D. Ill. Feb. 11, 2005) ("Schwab alleges that Acorn induced Carter to copy computer information, resign from Schwab, and take up employment with Acorn, delivering the copied information to Acorn. Schwab also alleges that it incurred costs of at least $5,000 during a one-year period. As such, Schwab has properly alleged a civil cause of action under the CFAA.").

Cigniti then argues that the complaint sufficiently states that it cost more than $5,000 "in computer forensics for each affected laptop." Dkt. No. 26 at 18.

But a court in the Northern District of Texas recently discussed the issue of aggregation across multiple defendants, finding that a complaint stating "'damages of more than $75,000 ... includ[ing] costs incurred to analyze and respond to [the d]efendants' actions, including the cost of its forensic analysis and the value of employee time expended to investigate [the d]efendants' actions related to Happy Bank's protected computers'" sufficiently alleged damages. *Centennial Bank v. Holmes*, No. 5:23-cv-44-H, 2024 WL 733649, at *14 (N.D. Tex. Feb. 20, 2024). In explaining its decision, the Court stated that,

> because Centennial's complaint combines the total losses rather than individualizing it to each defendant, the defendants claim that Section 1030(c)(4)(A)(i)(I) is not satisfied. They cite *In re DoubleClick Inc. Privacy Litigation*, where the district court found that the CFAA permits aggregation "across victims and over time" but only for "a single act." 154 F. Supp. 2d 497, 523 (S.D.N.Y. 2001). In contrast, the defendants' deletions are separate acts, and, therefore, they contend that Centennial cannot aggregate and plead that it suffered $75,000 in loss to meet the $5,000 threshold. See Dkt. No. 64 at 19–

20. However, other courts have rejected *In re DoubleClick's* single-act approach, holding that "the $5,000 floor applies to how much damage or loss there is to the victim over a one-year period." *E.g., Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 934 (9th Cir. 2004).

More importantly for this Court, the Fifth Circuit has approved aggregating losses across defendants. *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1158 (5th Cir. 2006). In *Fiber Systems*, the plaintiff demonstrated that three defendants had "knowingly and intentionally accessed, deleted, downloaded, copied, took, and stole [its] confidential business and proprietary information and trade secrets, without authorization, from [its] computers," and that their actions "caused [the plaintiff] loss totaling $36,000." *Id.* at 1155, 1158. Without disaggregating or requiring specific numbers as to each defendant, the Fifth Circuit stated that the $36,000 amount "far exceeds the $5,000 loss requirement." *Id.* at 1158. While Fiber Systems involved an earlier version of the CFAA, the statutory language at issue is identical. *See id.* at 1157; 18 U.S.C. § 1030(c)(4)(A)(i)(I). Following *Fiber Systems*, at least one other court in the Fifth Circuit has also approved of aggregating losses from various defendants. [*Quantlab Techs. Ltd. (BVI) v. Godlevsky*, No. 4:09-CV-4039, 2015 WL 1651251, at *3 (S.D. Tex. Apr. 14, 2015)]. Accordingly, Centennial's aggregation of its losses is permitted under the CFAA.

*Id.*

It appears that the complaint in *Centennial* and the jury instruction in *Fiber Systems* referenced damages across multiple computers.

While the undersigned acknowledges *Centennial's* analysis, the undersigned finds that *Fiber Systems's* review of a jury instruction for plain error does not abrogate the finding that the statute requires $5,000 in damage to "a protected computer," even if the damage can be aggregated across multiple defendants. And so, the undersigned finds that Cigniti has not properly alleged damages for the claims under the CFAA.

And, although Cigniti refers to an individual computer in their allegation against Kote under 18 U.S.C. § 1030(a)(4), the Court agrees with Defendants that alleging the value of information at $5,000 is not sufficient. *See Saffron Rewards, Inc.*

*v. Rossie*, No. 22-CV-02695-DMR, 2022 WL 2918907, at *8 (N.D. Cal. July 25, 2022) ("Rossie 'obtained valuable information 'that was 'valued at over $5,000' 'intentionally and without authorization,' causing a loss exceeding $5,000. Saffron fails to adequately claim a cognizable "damage" or "loss" that conforms with the "limited parameters" of the CFAA. The complaint does not articulate any technological harm or interruption to Saffron's computer-related services, nor that Saffron conducted any damages assessments or data restorations in response to Rossie's withholding of the Company Accounts.); *see also Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021) ("The statutory definitions of 'damage' and 'loss' thus focus on technological harms – such as the corruption of files – of the type unauthorized users cause to computer systems and data.").

And so, the Court should dismiss Cigniti's CFAA claims.

6. <u>TUTSA Preemption</u>

Defendants argue that Count VI – Violation of Texas Civil Practice and Remedies Code §143.001 (Texas Harmful Access by Computers Act ("HACA")) – is preempted under the Texas Uniform Trade Secrets Act ("TUTSA") claim asserted by Cigniti in state court. *See* Dkt. No. 21 at 21.

Cigniti alleges that,

[p]ursuant to § 143.001 of the Texas Civil Practice and Remedies Code, Defendants' knowing and intentional violation of § 33.02 of the Texas Penal Code makes Defendants liable in a civil action for harmful computer access to Cigniti's computer network and systems. Defendants knowingly accessed Cigniti's computer networks and systems by logging in to their computers, wrongfully soliciting current and prospective clients to QualiZeal, misappropriating Cigniti intellectual property, and deleting incriminating digital evidence as discussed above.

Dkt. No. 1 at 39.

Cigniti argues that the claim is not preempted because it does not relate to confidential information or trade secrets. *See* Dkt. No. 26 at 7. Cigniti claims that the copyrights works "were intentionally created for public presentation to Cigniti's existing and potential customers and were appended to Cigniti's complaint without any accompanying request for sealing or confidentially." *Id.*

"TUTSA preempts claims based on the unauthorized use of confidential information that was not a trade secret." *ScaleFactor, Inc. v. Process Pro Consulting*, LLC, 394 F. Supp. 3d 680, 684-85 (W.D. Tex. 2019) (finding preemption when both claims were based on "the destruction or copying of company data" and the harm from both claims was "the taking of [ScaleFactor's] confidential information").

While Cigniti attempts to distinguish the HACA claim as pertaining to nonconfidential copyrighted information, the complaint alleges that Pradeep and Kalyana "misappropriate[ed] Cigniti['s] confidential and copyrighted works for the benefit of QualiZeal." Dkt. No. 1 at 9. They also allege that Kote used the Cigniti computer systems to "misappropriate [Cigniti's] intellectual property." *See id.* at 11.

Cignit also alleges "[t]o assist in funneling Cigniti confidential and protected information to QualiZeal, Pradeep and Kalyana recruited the aid of (now former) Cigniti employees. The individuals who aided Pradeep and Kalyana in their efforts to divert current and prospective clients from Cigniti to QualiZeal and to misuse Cigniti computer systems include: Ravi, Kote, Ashwin, and Ram." *See id.* at 10.

And so, the Court should find that TUTSA preempts Cigniti's HACA claim because it relates to the taking of confidential information.

7.   Specific Acts of Copyright Infringement

Defendants argue that Cigniti fails to allege any facts against Kote or Kalyana that "would plausibly show they are liable for copyright infringement." Dkt. No. 26 at 23. In the complaint, Cigniti only alleges claims against Pradeep and QualiZeal under the copyright infringement causes of action. *See* Dkt. No. 1 at 40-41.

Cigniti responds that it has alleged that, "[o]n July 8, 2021, Kote forwarded a Cigniti PowerPoint deck, which contains copyright protected works and other intellectual properties of Cigniti, regarding DrFirst to his personal Gmail account." *Id.* at 24. And "[i]n conjunction with Kalyana, Pradeep used Cigniti intellectual property to develop QualiZeal's templates, for example, such templates include a Master Contractor Agreement, Statement of Work, Non-Disclosure Agreement, Employment Offer Letter, Prospect Scoring Index, and other business forms." *Id.* at 23. Defendants respond this still fails to state a claim because the allegations against Kote and Kalyana do not reference the "three asserted copyright registrations" listed in the copyright infringement causes of action. Dkt. No. 29 at 8.

> The Fifth Circuit has explained that a plaintiff's pleading does not comply with Rule 8(a)(2) when the plaintiff fails to allege specific acts of copyright infringement that each defendant committed. *See Taylor v. IBM*, 54 F. App'x 794 (5th Cir. 2002) (per curiam). Lower courts in this circuit have dismissed infringement claims that failed to "attribute specific acts of infringement to each defendant." *See, e.g., Springboards to Educ., Inc. v. Kipp Found.*, No. 3:16-CV-2436-G, 2017 WL 3917701, at *4 (N.D. Tex. Sept. 7, 2017).

*ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*, 667 F. Supp. 3d 411, 421 (S.D. Tex. 2023) (internal citations omitted).

And, so, the Court must determine whether the factual allegations against Kote and Kalyana plausibly state a claim for copyright infringement.

"To prove copyright infringement, a plaintiff must establish (1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Cat & Dogma, LLC v. Target Corp.*, No. 20-50674, 2021 WL 4726593, at *2 (5th Cir. Oct. 8, 2021) (per curiam) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 549 (5th Cir. 2015) (quoting, in turn, *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007) (per curiam)).

The undersigned finds that Cigniti has not plausibly alleged that Kalyana committed acts of copyright infringement because it does not claim Kalyana infringed on a copyrighted work. And sending copyrighted material to Kote's personal email similarly does not sufficiently state a claim of copyright infringement.

And so, the Court should dismiss the copyright infringement claims against Kote and Kalyana.

## Recommendation

The Court should grant in part and deny in part Defendants' Motion to Compel Arbitration [Dkt. No. 20] and compel arbitration as to the signatory defendants. The Court should grant Defendants' Motion to Dismiss [Dkt. No. 21] as to Kote, Kalyana, and QualiZeal and dismiss claims I-V and VII-IX without prejudice and dismiss claim VI with prejudice.

The Court should grant Cigniti 21 days from the date of any order adopting these Findings, Conclusions, and Recommendations in which to file an amended complaint to replead its claims that are dismissed without prejudice, if it can, consistent with this recommendation and the conclusions and findings above and should order that, if Cigniti fails to do so, any of those claims that it does not replead will be dismissed with prejudice without further notice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 7, 2024

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE